UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STANISLAUS L. LAKTAS,
    Plaintiff,

vs.                                                                                                          03-1374

HEALTH PROFESSIONAL LIMITED, et. al.,
    Defendants.

CASE MANAGEMENT ORDER

This cause is before the court for case management and for consideration of various pending dispositive motions including: 1) Defendants Bustos, Peterson and Piggott's Motion to Dismiss or Motion for Summary Judgement [d/e 73]; 2) Defendant Wexford Health's Motion to Dismiss [d/e 92]; 3) Defendant Hinsley, McAdory, Mueller and Walker's Motion to Dismiss [d/e 100] and 4) Defendant Anyanwu's Motion to Dismiss [d/e 124].

I. BACKGROUND

The plaintiff originally filed his complaint pursuant to 42 U.S.C. §1983 on November 13, 2003. The plaintiff filed a First Amended Complaint on February 27, 2004. The court dismissed this complaint with directions for the plaintiff's Second Amended Complaint which was filed on September 24, 2004.

The court found that the plaintiff had adequately alleged that the defendants had violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical need. The defendants include individuals from the Rock Island County Jail including Dr. Bruce Peterson, Nurse Midge Piggott and Jail Administrator Gerald Bustos. The plaintiff also named individuals from Menard Correctional Center including Health Professionals Limited, Dr. Adrian Feinerman, Dr Vallabaneni, Dr. Ahmend, Barb Mueller, Charles Hinsley, Eugene AcAdory, Roger Walker, Dr. Jovita Anyanwu and Wexford Health. The plaintiff alleged three separate violations including[1]:

> 1) the defendants at the Rock Island County Jail and the Menard Correctional Center failed to provide the medically approved care for a herniated disc.
> 2) the defendants at the Rock Island County Jail failed to provide care for his dental

---

[1] After further review of the complaint and the plaintiff's responses to dispositive motions, the court also finds that the plaintiff alleges that the defendants at the Menard Correctional Center were deliberately indifferent to his herniated disk, mastoid cavity problem, dental issues and bi-polar condition. *See Conclusion.*

problems including cracked and chipped teeth as well as lost filings; and
3) the defendants at the Menard Correctional Center failed to provide needed medications for his mental health conditions.

## II. FACTS

Defendants Bustos, Peterson and Piggott's have filed a Motion to Dismiss or Motion for Summary Judgement. All other defendants have filed a motion to dismiss. The following facts are taken from the complaint, the motions and the responses.

The plaintiff was arrested no November 20, 2001. The next day he was placed on suicide watch at the Rock Island County Jail. The plaintiff says all of his property was taken and he was only allowed one blanket and a thin plastic mat. The plaintiff says he slept on a concrete bed formation.

On December 10, 2001, the plaintiff says he went in for a standard examined by Dr. Peterson. He told the doctor that he had a metal plate surgically implanted in his neck. He also told the doctor he had been on medication for a number of years for his acid-reflux symptoms and mastoid cavity problem. The plaintiff claims the doctor told him he was a "street prescription junkie" and told him he would not receive any of these medications while he was incarcerated. (Comp, p. 6)

A. HERNIATED DISK

On December 31, 2001, the plaintiff says he fell on a wet floor while he was being escorted through the jail. The plaintiff was taken to an outside hospital for emergency treatment. Dr. Jack Buzek told the plaintiff he was suffering from an acute cervical spine strain and proscribed physical therapy. The doctor also stated that the plaintiff should be taken back to the doctor who had placed the metal plate in his neck to make sure no damage was done.

The defendants have provided a memorandum prepared by Defendant Nurse Piggott outlining the plaintiff's treatment. (Def. Memo, March 22, 2002 Memo) The jail staff claim the plaintiff first said he tripped on a mattress on December 31, 2001. He was sent to an outside hospital for follow up and X-rays had negative findings. Dr. Peterson attempted to examine the inmate on January 2, 2002, but he refused.

The plaintiff says he was returned to his strip cell and told a jail doctor would have to determine whether he would be permitted a regular bed. The plaintiff requested physical therapy, a regular bed and to see a doctor. On January 11, 2002, the plaintiff was examined by Dr. Peterson. The plaintiff says the doctor found that he had damaged his spine and ordered him to be seen by a neurosurgeon, Dr. David Udehn.

The plaintiff says he continued to suffer from severe pain in his neck and shoulders, but received no medical care until he saw Dr. Udehn on February 22, 2002. The defendants have

provided an incident report which states that the plaintiff refused to sign a release for his medical records to Dr. Udehn until he talked to his attorney.  The jail claims it took the plaintiff two weeks before he agreed to sign the form. (Def. Memo, March 22, 2002 Memo)

Dr. Udehn ordered an M.R.I.  which was performed on February 28, 2002.  On March 4, 2002, the plaintiff returned to Dr. Udehn who told him he had suffered a herniated cervical disc and "myeloradiculopathy." (Comp., p. 9)   The doctor stated it would be in the plaintiff's best interests to return to the facility where he originally had the surgery to insert the metal plate.

The plaintiff and defendants have provided medical notes from Dr. Udehn which state that the plaintiff would need surgery for the herniated disc and the old plate would likely have to be replaced.   The doctor indicated that the plaintiff was at some risk stating "this is not an emergency but should not be delayed excessively either." (Plain. Comp., Ex 6, p.7).  The notes also indicate the Defendant Piggott said the jail did not believe the injury occurred at their facility, but instead was a pre-existing condition.  Defendant Piggott said the plaintiff would be sentenced shortly and the jail staff would prefer that a long-term facility handle the problem.  Dr. Udehn's notes state that the "location of the surgery will definitely be determined by the legal process." (Def. Memo, Udehn note, March 21, 2002)

The plaintiff wrote a letter to Defendant Bustos asking to be taken to see the Iowa City doctor.  Bustos told the plaintiff that this was a medical issue that would be handled by the medical staff, but he was not going back to Iowa City. (Comp, p. 9)   Defendant Nurse Piggott documented in a March 22, 2002 memo that she saw the plaintiff twice a day to dispense medication and he did not ever complain to her about pain.  "He moves about in his cell without hesitation or outward signs of pain." (Def. Memo, March 22, 2002 Memo.)

The plaintiff says he continued to complain about his lack of medical care and lack of a regular bed, but his concerns were ignored.   The plaintiff also complained again to Dr. Peterson on April 10, 2002, but he says the doctor ignored his medical problems.  A medical note provided by the defendants indicates Dr. Peterson spoke to Dr. Udehn about the plaintiff's need for surgery.   Apparently the defendants realized the plaintiff might be incarcerated at the jail longer than was first anticipated.  The plaintiff had withdrawn his guilty plea and was now requesting trial.  Dr. Peterson was hoping to clarify how soon the surgery should be done.  On April 29, 2002, Dr. Peterson reached Dr. Udehn who indicated that "postponing surgery one month would be pushing it and that is should be done in two weeks." (Def. Memo, Dr. Peterson Note, April 29, 2002).   The states attorneys office was informed of the plaintiff's need for surgery.

The parties have also provided a copy of a letter dated May 1, 2002 from Dr. Udehn to Dr. Peterson.  Dr. Udehn states that in his opinion, surgery should be performed within 3 to 4 weeks.   The doctor says "this needs to be addressed in a timely manner.  It would be in the patient's best interest to return to the facility where he originally had the surgery." (Plain Resp, May 1, 2002 letter)

The plaintiff was sentenced to the Illinois Department of Corrections within this time frame on May 7, 2002.  The plaintiff was transferred to Menard Correctional Facility on May 14, 2002.

The Rock Island County Jail Defendants have also included the results of an investigation into the plaintiff's medical care by the Office of Jail and Detention Standards. (Def. Memo, Ex. C) A specialist was appointed to review the plaintiff's medical records and speak to jail staff.  The letter notes the plaintiff was seen by jail medical staff on 12 occasions and by outside medical providers on 4 occasions in a four and a half month period.   Defendant Bustos stated he received different accounts of how soon the plaintiff needed surgery and no definite date was ever indicated by Dr. Udehn.

On May 22, 2002, the plaintiff saw Dr. Anyanwu at Menard Correctional Center and discussed the M.R.I. and his need for surgery.  The doctor prescribed medication.  The plaintiff says he followed the doctors recommendations for exercise, but remained in great pain.

On August 14, 2002, the plaintiff again saw Dr. Anyanwu and a neurosurgical evaluation was recommended.  On August 15, 2002, Dr. Feinerman changed the recommendation to further testing.  On August 27, 2002, the plaintiff was taken to neurologist, Dr. Reddy.  The plaintiff says Dr. Reddy had not been provided with information from Dr. Udehn or a copy of the M.R.I..  Dr. Reddy performed the ordered tests and stated the plaintiff needed carpal tunnel surgery.  The plaintiff says he previously had carpal tunnel surgery and believes the diagnosis was incorrect.

The plaintiff says he was again examined by Dr. Anyanwu on August 28, 2002.  Dr. Anyanwu said he believed the plaintiff should be examined by another neurologist, but his recommendation was vetoed by Dr. Feinerman.   The plaintiff claims Dr. Anyanwu told him that he planned to resign because it was too difficult to get the proper medical care for inmates.

The plaintiff says he had to reduce the trips he took to the yard and chow hall due to the excruciating pain he suffered when he walked.   The plaintiff details repeated letters, grievances and medical visits in which he begged for the needed surgery.   The plaintiff was repeatedly seen by Dr. Ahmed, but says the doctor only prescribed pain medications.  The plaintiff says he sent several emergency grievances to Defendant AcAdory, but received no response.

B.  BI- POLAR CONDITION

The plaintiff says he complained to Dr. Ahmed and Dr. Vallabaneni that his bi-polar condition was worsening, but they would not prescribe the medications he had previously received.  The doctors refused to renew the prescriptions and told the plaintiff his current medications were adequate for his bi-polar condition.

On July 29, 2003, Dr. Ahmed discontinued the plaintiff's prescription for Lithium which he had been taking for his bi-polar condition.  The doctor told the plaintiff his shakiness and body jerks were due to his spine condition.

The plaintiff informed Dr. Ahmend and Dr. Vallabaneni on more than one occasion that his bi-polar condition had worsened, but not action was taken.

The plaintiff's complaint makes no specific complaints about lack of treatment for his mental health problem in the Rock Island County Jail other than his claim that Dr. Peterson called him a street junkie in his initial screening of the plaintiff and told him he would not be receiving all the same medications at the jail.

C.  TOOTH PROBLEMS

The plaintiff says on December 18, 2001, he complained to Defendant Nurse Piggott that he had a cracked tooth and a filling which fell out, but she ignored his complaints.

On March 15, 2002, the plaintiff told Piggott about a second chipped tooth that was causing him pain. He says she only gave him a dental gum strip to use. The plaintiff says he handed the plaintiff an entire filling on April 21, 2002, and she again took no action beyond giving him a dental gum strip. The plaintiff wrote to Defendant Bustos asking to see a dentist and was ignored.

Defendant Piggott says she was employed as a registered nurse at the Rock Island County Jail during the time periods of the complaint. The nurse says she has no memory of the plaintiff ever complaining to her about his teeth or handing her any fillings. Defendant Piggott says even if the plaintiff had informed her of a tooth problem "jail procedure requires me to inform the inmate that they need to fill out a 'sick slip' in order to see the jail doctor for dental problems, unless there is an emergency." (Def. Mot, Pig. Aff, p. 1) The defendant says she is not qualified to make a dental referral to a professional outside the jail. "Only the jail doctor can make those decisions." *Id.*

Defendant Piggott says she has reviewed all the Inmate Service Request forms filled out by the plaintiff and none request dental care. The defendant has also reviewed all the medical reports and there is nothing to indicate the plaintiff requested or even mentioned dental treatment. Lastly, the plaintiff was on suicide watch during his incarceration at the jail and correctional officers were required to check him every 15 minutes. The officers are also required to refer the inmate to the doctor if the inmate complains of medical or dental problems. There are no records indicating the plaintiff requested dental care.

The plaintiff alleges he has still not received dental care at the Menard Correctional Center.

D. MASTOID CAVITY

The plaintiff says he complained about his mastoid cavity problems to doctors at Menard Correctional Center on more than one occasion, but nothing was done. The plaintiff says he asked to see an ear doctor about the problem, but this request was denied. The plaintiff makes

no specific complaints about problems with this condition at the Rock Island County Jail in his complaint.

### III.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim.  It is well established that pro se complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972).  *See also Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980).  They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521.

When considering whether to dismiss a complaint for failure to state a claim, the court takes the allegations in the complaint as true, viewing all facts and reasonable inferences drawn from those facts in the light most favorable to the Plaintiff.  *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.  1990).

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c.  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970)*;  Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position*.  Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV.  ANALYSIS

A.  DEFENDANTS PETERSON, PIGGOTT AND BUSTOS MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGEMENT.

All of the issues in the defendants' motion require consideration of matters outside the pleadings.  The court will therefore consider the motion as a motion for summary judgement.  The plaintiff was given ample time to file a response and has provided a well-supported response to the motion.

1. DEFENDANT BUSTOS

The defendants first argue that any claims against Defendant Jail Administrator Gerald Bustos are time barred. Section 1983 claims borrow the statute of limitations established by the state in which the claims are filed. *Shropshear v. Corp. Counsel of the City of Chicago,* 275 F.3d 593, 594 (7th Cir.2001). "[T]he appropriate statute of limitations for §1983 cases filed in Illinois is two years as set forth in 735 ILCS §5/13-202."*Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998).

The plaintiff left the Rock Island County Jail on May 14, 2002, so the plaintiff had to file his complaint against Defendant Bustos before May of 2004. The defendants say the original complaint filed in January of 2004, only named Peterson and Piggott as defendants. The defendants say the plaintiff did not mention Defendant Bustos until his Second Amended Complaint which was submitted on July 26, 2004 and granted on September 24, 2004.

Rule 15c of the Federal Rules of Civil Procedure determines whether or not a plaintiff may amend his complaint to add a new defendant once the statute of limitations period has run. Amendments changing the party or the naming of a party "relates back" to the date of the original filing of the complaint if:

> . . . [the claim arose from the same conduct asserted in the original complaint] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed. R. Civ. Proc. 15(c)(3).

The plaintiff actually filed a First Amended complaint on February 27, 2004. In this complaint, the plaintiff first identifies Defendant Jail Administrator John Doe. [d/e 17]. The court dismissed this complaint because the pro se plaintiff had not submitted a complete complaint to the court including all of his claims. Nonetheless, Defendants Piggott, Peterson and the Rock Island County Jail were aware of this complaint and the named defendants. The claims in the amended complaint arise out of the same conduct asserted in the original complaint and the defendant had notice of the lawsuit. The motion to dismiss the claims against Defendant Bustos as time barred is denied.

2. LACK OF SURGERY

The defendants next argue that the failure to provide surgery for the plaintiff's herniated disk is not a violation fo the plaintiff's constitutional rights. An Eight Amendment claim must pass both an objective and a subjective test in order to establish that the defendants conduct violated the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id.* Second, the Plaintiff must show that the Defendants acted with deliberate indifference. *Farmer v.*

*Brennan*, 511 U.S. 825, 828 (1994).

"[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar*, 112 F.3d, 262, 267 (7th Cir. 1997). Most importantly, even if the doctors did not make the right decisions, "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).

The defendants state that the plaintiff's only claim is that the defendants "failed to arrange for his surgery before the date that Doctor Udehn prescribed." (Def. Memo, p.6) This is not entirely correct. The plaintiff also alleges the defendants did not follow the recommendations of the emergency room doctor, delayed the plaintiff's visit to Dr. Udehn and did not provide proper care prior to his transfer to the Illinois Department of Corrections.

This is the undisputed record before the court of the plaintiff's medical care during his nearly five month state in the Rock Island County Jail :

**December 31, 2002**: plaintiff falls and is sent to emergency room. X-ray results negative.
**January 7, 2002**: plaintiff sees Nurse Piggott and Dr. Peterson. Complains of neck, head, shoulder and
back pain. Neurosurgeon consult recommended.
**February 15, 2002**: plaintiff seen by Dr. Udehn, a Neurologist, an M.R.I. is ordered.
**February 28, 2002**: M.R.I. performed.
**March 4, 2002**: plaintiff returns to Dr. Udehn. He is told surgery is need. The doctor says plaintiff is at risk. However, doctor also states "this is not an emergency but should not be delayed excessively either." (Plain. Comp., Ex 6, p.7).
**April 25-29, 2002**: plaintiff changes his plea and defendants realize he may be incarcerated for a longer period of time than expected at the jail. Dr. Peterson calls Dr. Udehn for clarification of the time frame for surgery.
**April 29, 2002**: medical note indicates that Dr. Udehn said surgery should not be delayed more than a month and two weeks was preferred.
**May 1, 2002**: a letter from Dr. Udehn says the surgery should occur within three to four weeks.
**May 7, 2002**: Plaintiff sentenced to the Illinois Department of Corrections.

Based on this record, the plaintiff can not demonstrate that the defendants were deliberately indifferent to his serious medical condition. The plaintiff first claims the defendants never followed up on the emergency room doctor's prescribed treatment. However, there is no evidence before the court of any specific treatment. The X-ray was negative and there is no indication of further treatment recommended. The only document on this point is a letter from Nurse Piggott to Defendant Bustos dated March 22, 2002. (Def. Memo, p. 33) The nurse is describing the plaintiff's medical history and

care. Defendant Piggott states that the X-ray had negative results and Tylenol was prescribed as needed. *Id.*

The plaintiff next claims the emergency room doctor said the plaintiff should see a doctor by the end of the week, but it took six weeks to see Dr. Udehn. The plaintiff has no response to the defendants claim that the delay was caused by the plaintiff's refusal to sign a medical record release form.

The plaintiff further says Dr. Udehn recommended that he be seen by his original doctor in Iowa City. Irregardless, the plaintiff has no constitutional right to treatment from a specific doctor. *Forbes,* 112 F.3d. at 267.

There is no debate that the defendants continued to check with Dr. Udehn about the appropriate time frame for his surgery. There is also no debate that the plaintiff had left the Rock Island County jail before this time frame expired. The plaintiff may have preferred to have surgery sooner and the defendants may have hoped to avoid the expense of the surgery. However, there is no evidence the defendants were deliberately indifferent to his medical condition.

The plaintiff claims that the May 1, 2002 letter from Dr. Udehn saying surgery is needed in 3 to 4 weeks was really a contrived document. The plaintiff says the document also indicates the doctor could not state the cause of the injury "due to the patient's history of not being reliable." (Plain Resp, May 1, 2002 Doc.). The plaintiff says the defendants were just trying to create paperwork to weaken the plaintiff's claim that the accident at the jail caused his injury. The argument is irrelevant since the cause of the injury is not before this court. It also does not refute the fact that the plaintiff was not longer in the Rock Island County Jail at the end of three to four weeks recommended for surgery.

As for the plaintiff's claims that he was denied all care while at the Rock Island County Jail, he has failed to provide evidence of any prescribed treatment that he was denied. The defendants did not ignore the plaintiff's medical condition since he was sent to an outside specialist and an M.R.I was performed. There is no clear evidence that any other treatment was prescribed. The plaintiff was seen by medical personnel approximately 12 times in the three and a half months from December 31, 2001 to April 16, 2002. The plaintiff was also regularly monitored while on suicide watch. The plaintiff has failed to demonstrate deliberate indifference on the part of the defendants at the Rock Island County Jail. The defendants motion for summary judgement on the plaintiff's claim that they were deliberately indifferent to his herniated disk is granted.

    3. DENTAL CARE.

The defendants claim the plaintiff cannot demonstrate that Nurse Piggott knew or was aware of the plaintiff's dental problems and therefore cannot show that she was deliberately indifferent. The plaintiff claims he repeated told Defendant Piggott about his chipped teeth and lost fillings. The plaintiff says he even handed the nurse one of his lost fillings. The plaintiff says the defendant simply provided him with dental strips.

Defendant Piggott claims she has no memory of any discussion with the plaintiff about his teeth. However, even if she had, the defendant says she is not the person who approves dental care and she would have informed the plaintiff that he needed to fill out a sick slip or request to see the doctor. There is no evidence the plaintiff did either.

The plaintiff offers no explanation for why he never filled out a sick slip about his teeth. The plaintiff has no explanation for why he never requested a doctor's examination for his teeth. The plaintiff has no explanation for why he never mentioned a problem with his teeth during one of his medical examinations. The plaintiff also has no explanation for why there is no evidence he ever complained to anyone else, even while he was on monitored suicide watch.

The plaintiff argues that Defendant Nurse Piggott had more power than she claims. Nonetheless, there is no evidence that this defendant could approve a dental exam. The plaintiff has failed to provide any evidence that he made a proper request for dental care or that he did not know how to make this request.

The plaintiff does points to a dental screening document from Menard Correctional Center as proof of the poor condition of his teeth. The plaintiff admits the document cannot demonstrate that he complained about his teeth at the jail. In addition, the screening document contains a section where the examiner can approve a routine dental examination at the receiving institution or schedule an immediate dental examination. Neither was approved. (Plain Resp., Dental Screen)

While there is debate as to whether the plaintiff ever told Defendant Piggott about the problems with his teeth, there is no evidence that this defendant knew the plaintiff suffered from a serious medical condition. There is also no evidence the plaintiff mentioned this problem to any other defendant at the Knox County Jail. The defendants motion for summary judgment on the plaintiff's claim that the defendants were deliberately indifferent to his dental problems is granted. The court also notes that while the plaintiff mentions problems with psychiatric medications and failure to treat a mastoid cavity problem, the complaint only elaborates on these claims at the Menard Correctional Center, not the Rock Island County Jail. Therefore, the motion for summary judgment on behalf of the jail defendants, Bustos and Piggott, is granted in its entirety.

B.  DEFENDANT WEXFORD'S MOTION TO DISMISS

Defendant Wexford Health argues that all claims should be dismissed against it because the plaintiff has failed to exhaust his administrative remedies against Wexford and the plaintiff has failed to state a cause of action against Wexford. Defendant Wexford states it took over the contract to provide medical care at Menard Correctional Center on March 1, 2004. The defendant states neither Wexford nor its doctors were involved in the care that lead to the lawsuit and they were not named in the plaintiff's grievance.

The plaintiff states that during a hearing on April 29, 2004, the court informed the plaintiff that he may need to add the current health care provider as a defendant. The plaintiff added Wexford in his Second Amended Complaint submitted on July 26, 2004.

10

Defendant Wexford's argument that the plaintiff has failed to exhaust administrative remedies against Wexford fails. The primary purpose of the grievance system is to alert prison officials to problem, not to provide personal notice to a particular individual that he might be sued. *Johnson v Johnson,* 385 F.3d 503, 522 (5th Cir. 2004).

> It is the nature of the plaintiff's claim, not when plaintiff saw a particular doctor or specifically named a defendant in his grievances, that is the paramount consideration in the exhaustion analysis. *Lewis v. Naku,* 2007 WL 3046013 (E.D. Cal. Oct. 18, 2007).

In the case before the court, the plaintiff has consistently claimed he has not received the necessary treatment for his conditions and plaintiff presents the very same claims in his complaint. "Prisoners are not required to file and exhaust a separate grievance each time they allegedly receive inadequate medical care for an ongoing condition." *Gomez v. Winslow,* 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001). In addition, Wexford Health Source had not taken over the contract to provide medical services until after the plaintiff filed this lawsuit. The plaintiff could not have exhausted administrative remedies prior to his lawsuit, but he alleges the medical provider still has not provided care for his serious medical conditions.

Defendant Wexford next argues the plaintiff has failed to state a claim upon which relief can be granted. Defendant Wexford says the complaint does not allege that the defendants were deliberately indifferent to his medical needs after March 1, 2004. In addition, the plaintiff has failed to allege an official capacity claim against the defendant.

The plaintiff is proceeding pro se and the court must liberally interpret the claims in his complaint. The plaintiff does allege that he notified Wexford directly that he was not receiving care for his medical needs and he had not received care as of the filing of his Second Amended Complaint. (Plain. Sec. Amended Comp, p. 19, para. 99). In addition, while not clearly plead, the court does believe the plaintiff intended to allege that both Health Processionals Limited and Wexford Health had an unwritten policy or practice of denying needed medical treatment for prisoners. The defendants argue the plaintiff has "no evidence" of this claim, but that is not a subject for a motion to dismiss. (Def. Memo, p. 4) Defendant Wexford's motion to dismiss is denied.

C. DEFENDANTS WALKER, MCADORY, HINSLEY AND MUELLER'S MOTION TO DISMISS.

Defendants Roger Walker, Eugene McAdory and Charles Hinsley have filed a motion to dismiss the plaintiff's claim that they were deliberately indifferent to his serious medical needs. The defendants argue that they are not medical professionals and therefore had to rely on medical personnel for any decisions about proper treatment and care of the plaintiff. *McEachern v Civiletti,* 502 F. Supp 532, 534 (N.D. Ill 1980).

The is no evidence before this court as to what each of these defendants knew about the plaintiff's medical condition and what contact they had or did not have with medical staff. This is an

issue better addressed in a motion for summary judgement.  The motion to dismiss these defendants is denied.

Defendant Barbara Mueller has also filed a motion to dismiss any claims against her. Defendant Mueller says she was only named as a defendant due to the plaintiff's complaints about the grievance process, and those claims were previously dismissed. *See* October 25, 2004 Court Order.

The defendant is correct.  The only mention of Defendant Mueller in the Second Amended Complaint states that this defendant intercepted an emergency grievance and told the plaintiff that the Health Care Unit Administrator would address the issue. (Plain Comp., p. 16, para. 79).  The plaintiff further states that he is suing this defendant for hindering his efforts in the grievance procedure.  This claim has been dismissed and therefore the motion to dismiss Defendant Mueller is granted.

D.  DEFENDANT ANYANWU'S MOTION TO DISMISS

Dr. Jovita Anyanwu has filed a motion to dismiss the Second Amended Complaint.  First, Dr. Anyanwu says she had no dealings with the plaintiff for any medical condition besides his back condition.  Second, the defendant says the complaint demonstrates that she was not deliberately indifferent to the plaintiff's medical needs.

Dr. Anyanwu argues that the complaint alleges that the plaintiff saw the doctor five times over a three month period.  During this time, the doctor conducted physical examinations, reviewed an MRI, prescribed medication and an exercise plan and recommended a neurosurgical evaluation.  The defendant argues that even though another doctor had previously recommended surgery, the Eighth Amendment does not prevent a prison doctor from exercising independent medical judgement.

The motion to dismiss is denied.  The court cannot say the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Haines*, 404 U.S. at 521.  The plaintiff's complaint alleges he was seen by a neurologist who not only recommended surgery, but also indicated the plaintiff was at risk and the surgery should not be delay.

CONCLUSION

All claims against the Rock Island County Jail defendants will be dismissed.  Defendant Mueller will also be dismissed since there are no surviving claims involving the grievance process. The court also finds that the plaintiff is not just alleging that he was denied treatment for herniated disk, but also that he was denied care at the Menard Correctional Center for his mastoid cavity problem, dental needs and psychiatric care.

**IT IS THEREFORE ORDERED that:**

**1) The court will interpret Defendants Bustos, Peterson and Piggott's dispositive motion as a motion for summary judgement. [d/e 73].  The motion is granted  pursuant to Fed. R. Civ. P. 56.  The Clerk of the Court is directed to enter judgment in favor of Defendants**

Bustos, Peterson and Piggott in accordance with this order.  The parties are to bear their own costs.

2) Defendant Wexford Health's motion to dismiss the Second Amended Complaint is denied.   [d/e 92]

3) Defendants Hinsley, McAdory, Mueller and Walker's motion to dismiss the Second Amended Complaint is granted in part and denied in part. [d/e 100]   The motion to dismiss Defendants Hinsley, McAdory and Walker is denied.  The motion to dismiss Defendant Barb Mueller is granted.  The clerk is directed to terminate Defendant Mueller from this lawsuit.

4) Defendant Anyanwu's motion to dismiss the Second Amended Complaint is denied. [d/e 124]

5) For clarification of the record, the court finds that the plaintiff's surviving claims are that Defendants Health Professionals Limited, Dr. Feinerman, Dr. Vallabaneni, Dr. Ahmed, Charles Hinsley, Eugene McAdory, Roger Walker, Dr. Anyanwu and Wexford Health were deliberately indifferent to the following serious medical conditions:
 1) a herniated disk, 2) a mastoid cavity problem, 3) dental needs and 4) bi-polar disorder.  The claims are against the defendants in their individual and official capacities.

6) This case is set for status hearing and hearing on the plaintiff's motions for a preliminary injunction on January 11, 2008 at 11:30 p.m. by telephone conference call.  The clerk is to issue a writ for the plaintiff's participation in the call.

ENTERED this 12th day of December, 2007.

                                                    s\Harold A. Baker
                                        _____
                                            HAROLD A. BAKER
                                    UNITED STATES DISTRICT JUDGE